```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA


KAREN L. WEISTER,              )
          Plaintiff            )
                               )
   vs.                         ) Civil Action No. 05-74
                               ) Judge Joy Flowers Conti/
JO ANNE B. BARNHART,           ) Magistrate Judge Amy Reynolds Hay
COMMISSIONER, SOCIAL SECURITY  )
ADMINISTRATION,                )
          Defendant            )
```

<u>REPORT AND RECOMMENDATION</u>

I.  <u>RECOMMENDATION</u>

It is respectfully submitted that the Motion for Summary Judgment filed by Plaintiff [dkt. no. 8] be denied. It is further recommended that the Motion for Summary Judgment filed by the Defendant [dkt. no. 9] be granted and that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits be affirmed.

II. <u>REPORT</u>

**A.   Procedural History**

Karen L. Weister ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

In her application filed on January 29, 2002, Ms. Weister alleges that she has been disabled since January 20, 1997, due to back and leg pain (Tr. 94, 109)). The state agency denied her application (Tr. 61). Thereafter, Ms. Weister requested a hearing before an Administrative Law Judge ("ALJ")(Tr. 71).

The case was heard before an ALJ on February 13, 2003 (Tr. 27-63). Ms. Weister, who was represented by counsel, and a vocational expert, Dr. Joseph Bentivegna, testified at this hearing Id. The ALJ concluded in a decision dated March 25, 2003, that Ms. Weister retained the ability to perform work activity at all exertional levels with some specified, non-exertional limitations (Tr. 11-22 ).

Ms. Weister requested review of the ALJ's decision by the Appeals Council, which denied her request, making the ALJ's decision the Commissioner's final decision for purposes of this judicial review. Ms. Weister then brought suit in federal district court (originally at C.A. No. 03-1154). The Commissioner moved for a remand to the Appeals Council, which District Judge Diamond granted on March 19, 2004.

On November 4, 2004, the ALJ conducted another hearing, at which time Weister and a vocational expert, Mr. Mark L. Heckman, testified (Tr. 370).

### B. Factual Background

Ms. Weister was born on September 16, 1958 (Tr. 94). She was forty-six years old at the time of the ALJ's most recent decision (Tr. 378). At the time of the hearing, Ms. Weister lived in Blairsville, Pennsylvania, with her husband (Tr. 31-32). Ms. Weister's daughter and son-in-law currently live with Ms. Weister and reportedly take care of her when Mr. Weister is away on work assignments (Tr. 338). Ms. Weister claims to be unable to work due to extreme back pain (Tr. 389-394).

### C. Medical History[1]

Plaintiff had two surgeries on her back prior to the alleged onset of disability, one in August 1995 and one in January 1996 (Tr. 138-42, 150-53). X-rays of the lumbar spine taken in October 1996 showed mild narrowing of the L5-S1 disk space (Tr. 163).

In November 1996, Plaintiff complained of left ankle pain and swelling (Tr. 351). Plaintiff had surgery to remove an extra tarsal bone from her left ankle in January 1997 (Tr. 168-70). Plaintiff has alleged disability beginning as of January 20, 1997, the date of her ankle surgery (Tr. 94).

---

[1] The Court accepts and reiterates here the factual statement of the Commissioner found in her Brief as the more detailed account of Weister's history.

Plaintiff had only minimal follow-up after her surgery (Tr. 350), but she reported continued left foot and ankle pain in June 1997 (Tr. 349).  Plaintiff had a tarsal tunnel release in July 1997 (Tr. 175-77).  On August 14, 1997, Plaintiff denied waking with pain or having difficulty falling asleep (Tr. 189).  She reported a pain level of only three out of ten, at worst (Tr. 189).  Plaintiff was scheduled for a series of epidural injections (Tr. 185-89), and she reported a ninety-percent improvement in her pain as of September 16, 1997 (Tr. 183).

Plaintiff had no follow-up treatment until June 1998, when she reported that she had difficulty sleeping (Tr. 348).  Her foot was "much better," and she had increased her activity and lost weight (Tr. 348).

Plaintiff had no significant follow-up treatment until May 1999, when she reported fatigue (Tr. 337).  Despite her fatigue, Plaintiff was using a home treadmill and doing "lots of yard work" (Tr. 337).

In November 1999, Plaintiff reported back, hip, and left leg pain (Tr. 332).  Straight leg-raising was negative, and Plaintiff had full motor strength and range of motion of her legs (Tr. 332).  She also had normal reflexes (Tr. 332).  An x-ray of the left hip was normal (Tr. 359), and an MRI of the lumbar spine showed a small L5-S1 extradural defect, unchanged over the past several years, with no stenosis (Tr. 358).  An x-ray of the

lumbar spine showed moderately severe disk space narrowing at L5-S1 (Tr. 357).

Plaintiff was referred to Michael Rutigliano, M.D., a neurosurgeon, for evaluation on December 28, 1999 (Tr. 328). Plaintiff had normal motor and sensory examinations, except for decreased pinprick sensation in the dorsum of the left foot (Tr. 328). She had normal gait and reflexes, except for diminished left Achilles reflex (Tr. 328). Dr. Rutigliano recommended use of Vioxx and home exercise (Tr. 328).

Plaintiff injured her left ankle in January 2000, but she had normal strength, range of motion, and vascular examination (Tr. 327). An x-ray showed no fracture (Tr. 356).

Plaintiff complained of back pain in July 2000 (Tr. 324). However, she had normal strength, reflexes, and range of motion (Tr. 324). Plaintiff was given Vioxx for pain, at her request (Tr. 324).

Plaintiff reported an exacerbation of her back pain in November 2000, after lifting a basket of clothes (Tr. 323). Plaintiff had normal strength, sensation, and reflexes, with somewhat limited range of motion (Tr. 323). Plaintiff's treating physician prescribed Percocet and Soma for a back strain, but indicated that he did not suspect a disk problem at that time (Tr. 323). Plaintiff continued to have normal straight leg-raising, strength, and reflexes (Tr. 322). She was to continue taking Vioxx and Percocet (Tr. 321-22).

On December 4, 2000, Plaintiff reported to an emergency room, complaining of back pain (Tr. 215). An MRI of the lumbar spine showed only minimal bulging at L5-S1 with no spinal stenosis (Tr. 217). Plaintiff began a course of physical therapy for her back pain (Tr. 224). She had muscle strength of five out of five, despite mild weakness on the left side, on December 15, 2000 (Tr. 320). Due to inconsistent attendance, Plaintiff had not improved significantly by January 3, 2001 (Tr. 222). Plaintiff resumed therapy and had some improvement by her discharge on January 21, 2001 (Tr. 218-21).

Plaintiff's medication was changed from Percocet back to Vioxx at the end of January 2001 (Tr. 317). Plaintiff had normal straight leg-raising and strength on February 21, 2001 (Tr. 316). She was to begin taking Elavil for pain (Tr. 316).

On March 6, 2001, Plaintiff had a neurosurgical consultation with Daniel J. Muccio, M.D. (Tr. 229-30). Plaintiff had slightly diminished lumbar range of motion, normal motor strength, normal motor tone, normal gait and stance, and normal reflexes, except for a one-half left ankle-jerk reflex (Tr. 229). Dr. Muccio reviewed recent MRIs and found no change since 1999 (Tr. 230). Dr. Muccio referred Plaintiff for caudal blocks (Tr. 230).

Michael P. Toshok, D.O., a pain management specialist, prescribed Neurontin and began caudal epidural blocks in mid-March 2001 (Tr. 259). Plaintiff had limited range of lumbar

motion but normal motor strength and sensation, as well as normal gait and heel-toe walking (Tr. 258-59).  Plaintiff began taking Oxycontin for pain, which was "extremely beneficial" (Tr. 257-58).  An EMG showed S1 radiculopathy on the left side, with no denervation (Tr. 257, 312).  Plaintiff continued to have normal gait, motor strength, and sensation, with only mildly reduced left leg reflexes, through June 2001 (Tr. 255).  Plaintiff's medications were changed due to side effects, so she resumed taking Oxycontin, Elavil, and Neurontin for pain (Tr. 254).  Plaintiff noted that her pain was "overall well-controlled with the current (sic) regiment" (Tr. 254).

       Plaintiff was involved in a car accident in August 2001 (Tr. 231-34).  An x-ray of the lumbar spine showed only disk space narrowing at L5-S1 (Tr. 233).  An x-ray of the cervical spine was normal (Tr. 234).  Plaintiff had normal strength, sensation, and reflexes, with a slightly antalgic gait (Tr. 309).  Plaintiff continued to be treated with pain medication, including Elavil, ibuprofen, and Oxycontin, and received a steroid injection in the sacroiliac joint for pain (Tr. 251-52).

       Examination was unchanged in November 2001, with normal sensation, reflexes, and motor examination (Tr. 245).  An x-ray of the lumbar spine showed only degenerative changes of the L5-S1 disk (Tr. 354).  Plaintiff had a series of injections for back pain (Tr. 243-45), and Dr. Toshok prescribed a TENS unit in February 2002 (Tr. 295).

Plaintiff was treated for hypertension in January and February 2002, but her hypertension was controlled by February 18, 2002 (Tr. 236). Plaintiff's back pain was also described as "controlled" by her treating general practitioner (Tr. 236). Plaintiff had no change in her physical examinations and continued to take various medications for pain and receive sporadic sacroiliac injections (Tr. 240-42, 290).

On May 21, 2002, Plaintiff was examined by Rodger C. Searfoss, M.D. (Tr. 262-66). Plaintiff had minimally limited range of motion of her lower back, normal straight leg-raising, normal reflexes, normal motor strength, and normal sensation (Tr. 263). X-rays showed marked disk space narrowing at L5-S1 (Tr. 263). Plaintiff was able to tiptoe and heel-walk and had a normal gait (Tr. 263). Dr. Searfoss opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally; stand/walk six hours or more per day; sit without limitation; and perform postural activities, such as bending, kneeling, stooping, and crouching, occasionally (Tr. 266-67). Dr. Searfoss also opined that Plaintiff should never climb and should avoid temperature extremes (Tr. 267).

In June 2002, Plaintiff reported that she had been working out at a gym for the past six months (Tr. 306). Her sacroiliac injections were discontinued due to lack of effect (Tr. 287-89). Plaintiff reported increased severity of back pain in August 2002, for which Dr. Toshok prescribed Oxycontin and

Bextra (Tr. 286). An MRI showed multi-level degenerative changes, most severe at L5-S1, with a moderate disk protrusion without spinal nerve or nerve root compromise (Tr. 281). Plaintiff's hypertension remained under good control (Tr. 280).

Plaintiff completed a functional capacity evaluation on November 20, 2002 (Tr. 298-99). She demonstrated the ability to lift ten to fifteen pounds; could sit, reach, squat, and stand occasionally; and could rarely bend (Tr. 298-99).

    C.    **Hearing Testimony and ALJ Decision**

At the hearing, Ms. Weister reported that she experiences chronic, sharp shooting low back pain which radiates to her left lower extremity (Tr. 374). Additionally, she testified that she is unable to sit, stand or walk for prolonged periods of time, nor can she lift and carry heavy objects, due to her back pain. Id. Ms. Weister indicated that her activities are limited to watching television and reading. Id. However, she also reported that she is able to walk 5-9 miles per week, notwithstanding her pain. Id.

At the administrative hearing, the ALJ asked a vocational expert to assume a hypothetical individual with Plaintiff's background who could perform a limited range of sedentary work (Tr. 402-03). In particular, the individual could occasionally kneel and climb ramps or stairs; never balance, stoop, crouch, crawl, or climb ladders, ropes, or scaffolds; and occasionally push or pull with the legs (Tr. 403). The

hypothetical individual would be required to have a sit/stand option at will; have no prolonged exposure to temperature extremes or excessive vibration; and perform only simple, routine, repetitive tasks involving only simple work-related decisions and few workplace changes (Tr. 403). The vocational expert testified that the hypothetical individual could perform 308,770 jobs in the national economy (Tr. 403-04).

The ALJ found that Plaintiff had severe impairments which did not meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 371-72). The ALJ found that Plaintiff retained the ability to perform the limited range of sedentary work described to the vocational expert (Tr. 375). Based on a vocational expert's testimony, the ALJ found that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy (Tr. 375-76).

### D.  Standard of Review

Presently before the Court are the parties' cross-motions for summary judgment. In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

Substantial evidence is defined as less than a preponderance and more than a mere scintilla.  Perales, 402 U.S. at 402.  If supported by substantial evidence, the Commissioner's decision must be affirmed.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility, see 20 C.F.R. § 404.1520, but in this case only step five is in dispute.[2]  At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity,[3] age, education, and past work experience, he can perform work that exists in significant numbers in the regional or national economy.  42 U.S.C. § 423(d)(2)(A); see also Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

**E.   Discussion**

Plaintiff makes three arguments in this case.  First, she claims that the ALJ erred in evaluating the medical evidence of record, failing to develop a "true and accurate explanation of Ms. Weister's disabilities."  (Pl.'s Br. at 12-14).  In

---

[2]   The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.

[3]   A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments.  Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

particular, she asserts that "[e]very single **medical doctor's** opinion" supports a finding of disability (Pl.'s Br. at 14). We note, however, that this assertion ignores the medical opinion of Dr. Searfoss, who opined that Plaintiff could perform a range of work even greater than that adopted by the ALJ (Tr. 266-67, 373, 377).

The ALJ found that Plaintiff could perform work that did not require lifting more than ten pounds; prolonged sitting, standing, or walking; more than occasional kneeling or climbing of ramps and stairs; balancing, stooping, crouching, crawling, or climbing ladders, ropes, or scaffolds; more than occasional pushing/pulling with the legs; prolonged exposure to temperature extremes or excessive vibration; more than simple, work-related decisions or frequent workplace changes; more than simple, routine, repetitive tasks; or work that would not allow a sit/stand option (Tr. 375). Based on what appears to have been a thorough examination and review of x-rays, Dr. Searfoss indicated that Plaintiff could perform a range of work slightly greater than that adopted by the ALJ (Tr. 262-67). In our view, Dr. Searfoss's medical opinion supports the ALJ's finding as to Plaintiff's limitations (Tr. 373).

Plaintiff next argues that the ALJ erred in relying on the opinion of a non-medical professional in assessing Plaintiff's limitations (Pl.'s Br. at 13-14). It appears that the ALJ mistakenly identified the opinion of Angela DiSalvo, DCA

I, as the opinion of a state agency physician (Tr. 268-77, 375). As the Commissioner points out, however, despite this error, remand is not necessary for several reasons. See Ward v. Commissioner of Social Security, 211 F.3d 652, 656 (1st Cir. 2000) (holding that remand to correct an error is not necessary if "it will amount to no more than an empty exercise"); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

     Initially, the residual functional capacity assessment completed by Ms. DiSalvo was based on the opinion of Dr. Searfoss, who was a qualified medical professional (Tr. 277). Ms. DiSalvo gave "great weight" to the assessment of Dr. Searfoss (Tr. 277). Because Ms. DiSalvo's opinion was based on and consistent with the opinion of an acceptable medical source whose opinion was accepted by the ALJ (Tr. 373), we find that the ALJ's reliance on Ms. DiSalvo's opinion does not require remand.

     As well, a state agency physician did review this case, finding no basis for a finding of disability (Tr. 61). Frank Bryan, M.D., apparently reviewed the evidence of record and indicated that Plaintiff was not entitled to disability benefits (Tr. 61). Thus, it appears that a second medical opinion

supports the conclusion of Ms. DiSalvo and the ultimate decision of the ALJ.

Further, the ALJ relied on what he presumed to be a state agency medical source opinion as only part of his assessment (Tr. 373-75). The ALJ also considered the clinical and objective findings of record, Plaintiff's treatment history, her daily activities, and the assessment of Dr. Searfoss (Tr. 373-75). All of this evidence supports the ALJ's conclusion that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy (Tr. 375-76).

In particular, a functional capacity evaluation completed by Plaintiff in November 2002 demonstrated that Plaintiff could perform a range of light to sedentary work (Tr. 298-99). Plaintiff demonstrated the ability to lift ten to fifteen pounds; sit, reach, squat, and stand occasionally; and rarely bend (Tr. 298-99). This is consistent with the ALJ's restriction of Plaintiff lifting only ten pounds, sitting only with a sit/stand option, and never stooping (Tr. 375).

Plaintiff suggests that the ALJ ignored the objective test results of record in finding that she could perform a limited range of sedentary work (Pl.'s Br. at 12-13). To the contrary, the ALJ found that the objective and clinical test results of record supported a finding of non-disability (Tr. 373, 374). X-rays and MRIs generally showed, at worst, a moderate disk bulge, without significant spinal stenosis (Tr. 217, 233,

263, 281, 354, 358). Clinical findings confirmed that any radiologic abnormalities did not significantly affect Plaintiff's functional abilities (Tr. 373, 374). Plaintiff had normal straight leg-raising, motor strength, reflexes, and sensation (Tr. 229, 255, 258-59, 263, 309, 316, 320, 322-24, 328, 332). These clinical and diagnostic findings supported the ALJ's conclusion that Plaintiff could perform a limited range of sedentary work (Tr. 373-75).

Plaintiff's activities also support the ALJ's finding that Plaintiff was not as limited as she has alleged (Tr. 374). Treatment notes document an ability to function well beyond what Plaintiff has alleged to the Agency and to this Court (Pl.'s Br. at 3-5). In May 1999, two years into the alleged period of disability, Plaintiff reported to her treating physicians that she was using a treadmill at home and doing "lots of yard work" (Tr. 337). This is inconsistent with her reports to the Agency that she had to rely on her husband to do all of the yard work (Tr. 127). Plaintiff also reported to her treating physicians that she was exercising at a level beyond that admitted to the Agency. In February 2002, Plaintiff reported to a treating physician that she was walking five to nine miles per week (Tr. 236). In June 2002, she reported to a treating physician that she had been working out at a gym for the past six months (Tr. 306). The evidence related to Plaintiff's activities

supports the ALJ's conclusion that Plaintiff was not as limited as she has alleged (Tr. 374).

Despite these inconsistencies in Plaintiff's reports, the ALJ placed significant limitations on Plaintiff's ability to work (Tr. 375).  Nevertheless, a vocational expert testified that a hypothetical individual with Plaintiff's background and the limitations adopted by the ALJ could perform 308,770 jobs in the national economy (Tr. 403-04).

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; Edelman v. Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996).  In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the

objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                        Respectfully submitted,

                                        s/ Amy Reynolds Hay
                                        AMY REYNOLDS HAY
                                        United States Magistrate Judge

Dated: 13 December, 2005


cc:   Hon. Joy Flowers Conti
      United States District Judge

      A. Tereaso Rerko, Esq.
      QUATRINI, RAFFERTY & GALLOWAY
      550 East Pittsburgh Street
      Greensburg, PA 15601

      Paul E. Skirtich,
      Assistant United States Attorney
      United States Attorney's Office
      700 Grant Street
      Suite 400
      Pittsburgh, PA 15219